IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| MARIAN SNOW, | ) ) ) |
| Plaintiff, | ) ) Case No. 5:18-CV-511-FL ) |
| v. | ) ) ) |
| GENERAL ELECTRIC COMPANY, DELL TECHNOLOGIES, DELL, INC., and DELL EMC, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS DELL TECHNOLOGIES, DELL INC., AND
DELL EMC'S MEMORANDUM IN SUPPORT
OF THEIR AMENDED MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ....................................................................................................... 2

III. LEGAL STANDARD ................................................................................................ 3

IV. ARGUMENT ............................................................................................................. 4

    A. Plaintiff Fails to State a TCPA Claim as to the Dell Defendants. .......................... 4

        1. The Dell Defendants Did Not Send Any Messages. .................................. 4

        2. Plaintiff's TCPA Claim Fails Because Plaintiff Has Not Adequately Alleged that the Messages She Received Were Sent Using an ATDS. .......................................................................................... 7

    B. Plaintiff Fails to State a Claim for Conversion. ................................................... 12

V. CONCLUSION ........................................................................................................ 14

## I. INTRODUCTION

Plaintiff Marian Snow does not assert a viable cause of action against Defendants Dell Technologies, Dell Inc., or Dell EMC (the "Dell Defendants"), and her Complaint should be dismissed. Plaintiff's First Amended Complaint ("FAC" or "Complaint") asserts claims for violation of the Telephone Consumer Protection Act ("TCPA") and for conversion relating to a series of text messages Plaintiff alleges she received on her cellular phone. Plaintiff's Complaint, however, is fatally flawed for three reasons:

- **First,** Plaintiff's TCPA claim fails because she has not alleged any facts connecting the text messages to the Dell Defendants. Despite her failure to allege facts that show the Dell Defendants had any involvement with the messages she received, Plaintiff concocts a far-fetched theory in an attempt to implicate the Dell Defendants. Specifically, Plaintiff concludes that because the text messages appeared to include information about technology developed by the Dell Defendants, the Dell Defendants must have been involved in sending the messages to her cellphone. Plaintiff, however, bases this conclusion on nothing more than her own imagination and a handful of press releases. The TCPA only holds the party who is the "maker" of the calls or text messages liable, and Plaintiff must allege that the Dell Defendants were involved in making and sending the text messages that she allegedly received. Plaintiff has not, and her claim should be dismissed.

- **Second,** Plaintiff's TCPA claim also fails because she does not allege that the text messages at issue were sent using an Automatic Telephone Dialing System ("ATDS"), which is a required element of a TCPA claim. At best, Plaintiff has alleged that some mistake occurred and she received text messages intended for the prior owner of her

1

phone number. But the TCPA is implicated only when text messages are sent using equipment that has the capacity to generate numbers randomly or sequentially and to dial those numbers. There can be no liability under the TCPA because Plaintiff fails to allege that the Dell Defendants used an ATDS to generate the messages to Plaintiff.

- **Third,** Plaintiff's conversion claim fails because Plaintiff has not alleged that the Dell Defendants wrongfully took possession of any tangible property. Plaintiff's complaint is not about the theft of her phone, and so, her claim for conversion is inappropriate and must be dismissed.

Accordingly, as set forth more fully herein, Plaintiff's First Amended Complaint should be dismissed.[1]

## II. BACKGROUND

Plaintiff alleges that on March 29, 2014, she purchased a cellular phone provided by Tracfone. FAC ¶ 12. Plaintiff alleges that between April 1, 2014 and January 15, 2015, she received thousands of text messages on her Tracfone. FAC ¶ 16. Plaintiff concedes that the text messages did not originate from a telephone number connected to Defendants but that the text messages came from various 10-digit long "Sender IDs," such as "1210100022" and "1210100025." FAC ¶¶ 32-33. These messages contained unintelligible text such as "FRM: EMC Control Center @e2ksmtp01.e2k.ad.ge.com"; "Severity: WARNING"; "Alert Name: PC Communications Error" and "gislonpeccsym.gis.corp.ge.com." FAC ¶ 48.

Plaintiff initially filed this case in federal court in Alabama. Dkt. No. 1. In January 2018, the Dell Defendants and GE moved to dismiss the complaint for lack of personal jurisdiction,

---

[1] The Complaint should also be dismissed for the reasons set forth in General Electric Company's motion to dismiss.

improper venue, and for failure to state a claim. Dkt. Nos. 25, 26. The court granted the motions in part, agreeing that it lacked personal jurisdiction over the Defendants because public filings demonstrated that Plaintiff lived in the Eastern District of North Carolina when she received the text messages at issue. Dkt. No. 44. Rather than dismiss the Complaint for lack of personal jurisdiction and lack of venue, the court opted to transfer the case to this Court. *Id.* Because the Northern District of Alabama lacked jurisdiction, it did not address the Defendants' substantive arguments that Plaintiff failed to state a claim. *Id.* at 18 n. 4. The case was subsequently transferred to this Court, and the Dell Defendants now renew their request to dismiss the Complaint for failure to state a claim.[2]

## III. LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss the complaint, the court accepts as true all facts set forth in the plaintiff's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, a complaint must do more than assert "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. However, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

While courts grant a pro se complaint the benefit of a liberal construction, the Court is not required to accept a pro se plaintiff's conclusions as true. *Ward v. Sec. Atl. Mortg. Elec.*

---

[2] The Dell Defendants have updated their briefing in light of material changes regarding the TCPA regulatory landscape. Specifically, the D.C. Circuit, in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018), vacated FCC guidance regarding the definition of ATDS.

3

*Registration Sys.*, 858 F. Supp. 2d 561, 564-65 (E.D.N.C. 2012). Rather, the Court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

### IV. ARGUMENT

#### A. Plaintiff Fails to State a TCPA Claim as to the Dell Defendants.

To state a claim for a violation of the TCPA, Plaintiff must allege that the defendant called a cellular phone using an ATDS. 47 U.S.C. § 227(b)(1)(A)(iii). Indeed, the express language of the TCPA makes it unlawful for a person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to a cellular phone. 47 U.S.C. §227(b)(1)(A)(iii). Plaintiff has failed to state a claim for violation of the TCPA because: (i) the Complaint does not establish that any Defendant, and particularly the Dell Defendants, made any call or text message that Plaintiff received; and (ii) Plaintiff does not allege that the text messages were sent using an ATDS.

##### 1. The Dell Defendants Did Not Send Any Messages.

First, the Complaint does not plausibly establish that any of the Defendants are the senders of the text messages that Plaintiff received. By Plaintiff's own admission, the text messages came from 10-digit long "Sender IDs" which contained no identifying information. FAC ¶¶ 32-33. The Complaint does not allege that the text messages contained advertisements for the Defendants' products or identified any individual as the sender. FAC ¶¶ 48, 57. Plaintiff relies on a handful of phrases from the unintelligible text messages that caused her to look up public statements

4

regarding EMC and General Electric. *Id.* This is a logical leap to hold an entity liable for statutory violations of the TCPA simply because an unintelligible text message might reference a company or a company's product. From these limited facts, Plaintiff makes conclusory allegations and legal assertions that General Electric and the Dell Defendants were somehow responsible for the text messages. The Court need not accept "legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). After removing Plaintiff's legal conclusions, the complaint is bereft of any factual matter tying any of the Defendants to the text messages that Plaintiff allegedly received.

Second, Plaintiff attempts to link the Dell Defendants to General Electric and this litigation by providing the Court with public statements that General Electric used information technology and/or equipment provided by Dell in some undefined aspect of General Electric's business. FAC ¶¶ 64-70. At best, she speculates that the Dell Defendants provided information technology support to General Electric, who was responsible for the making and initiating of the text messages. She does not allege that the Dell Defendants own the numbers from which she received the text messages, that any solicitations were made to her on behalf of the Dell Defendants, or that she had any information that identified the maker of the text messages as the Dell Defendants. Even assuming that Plaintiff has plausibly pled that General Electric may be the sender of these messages (and she has not), Plaintiff's theory linking the Dell Defendants to the messages is tenuous and legally impermissible.

Plaintiff suggests in her Complaint that Dell's technology enabled the automatic messages and that Dell had knowledge that General Electric could use the technology to send unsolicited text messages. *See* FAC ¶¶ 64-70. The Dell Defendants, however, cannot be liable for a TCPA violation based on someone else's use of its equipment. The FCC has addressed this issue directly

5

and found that the "maker" of the call under the TCPA, or the liable party, is the person who initiates or dials the call. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Am. Ass'n of Healthcare Admin. Mgmt. Am. Bankers Ass'n Coal. of Mobile Engagement Providers Consumer Bankers Ass'n Direct Mktg. Ass'n Paul D. S. Edwards Milton H. Fried, Jr., & Richard Evans Glide Talk, Ltd. Glob. Tellink Corp. Nat'l Ass'n of Attorneys Gen. Prof'l Ass'n for*, 30 F.C.C. Rcd. 7961 (2015). In that ruling, the FCC clarified whether the developer of an application that provided the automatic dialing technology was liable for calls initiated by companies to telephone numbers of consumers who had not consented to such communication. *Id.* The FCC held that the application developer was not liable because it did not "make" or "initiate" the calls at issue. *Id.* The FCC reasoned that the maker of the call must take "the steps necessary to physically place a telephone call." *Id.* Because the application developer did "not control the recipients, timing, or content, but instead merely has some role, however minor, in the causal chain that results in the making of a telephone call," the application developer was not the maker of the unwanted telephone call. *Id.*

Consistent with the FCC's ruling, courts have consistently held that individuals who merely provide the technology to connect calls are not liable under the TCPA as the "maker" of the phone call. *See, e.g. Smith v. Securus Techs., Inc.*, 120 F. Supp. 3d 976, 981 (D. Minn. 2015) (finding that an inmate who dials calls is the "maker" and not the automated connecting service); *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 394 (D. Colo. 2014) ("We conclude that a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include person or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call."); *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 WL 5013299, at *5 (N.D. Cal. Aug. 24,

2015).  For example, in *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015), plaintiffs received automated messages from anonymous sender IDs and asserted a TCPA claim against the technology company that provided the process for sending the anonymous text messages.  The Court concluded that the technology company was not the maker or initiator of the text message under the TCPA and dismissed the case because no "sender" was identified in the complaint.  *Id.*

Here, the Sender IDs do not reveal any identifying information about who actually made or initiated the text messages, and they certainly do not implicate any of the Defendants in this action.  It is Plaintiff's burden to affirmatively establish that the text messages she received were sent by the Dell Defendants or placed on their behalf.  *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592-93 (S.D. Ohio 2011) ("Absent some indication that [Defendant] was somehow involved with the nineteen other calls, there is no basis for liability attaching to [Defendant] as to those calls.").  Plaintiff has not met her burden.  In short, the Complaint does not contain any facts suggesting that the Dell Defendants had any actual connection to these text messages.  Thus, her claim for a violation of the TCPA must be dismissed.

    2. <u>Plaintiff's TCPA Claim Fails Because Plaintiff Has Not Adequately Alleged that the Messages She Received Were Sent Using an ATDS.</u>

Plaintiff's ATDS allegations fall far short of satisfying the *Iqbal/Twombly* pleading standards.  Plaintiff has done precisely what Federal Rule of Civil Procedure 8(a)(2) and the Supreme Court forbid—she merely recites the statutory definition of an ATDS with the addition of a few conclusory statements.  *See Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009).  This is not enough.

To state a claim for relief under the TCPA, Plaintiff must allege facts making a plausible claim that the caller used an ATDS in sending the texts at issue.  *See Ananthapadmanabhan v. BSI*

*Fin. Servs., Inc.,* No. 15-cv-5412, 2015 WL 8780579, at *3 (N.D. Ill. Dec. 15, 2015). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In other words, to state a claim for violation of the TCPA, Plaintiff must allege that the texts at issue were sent using equipment that has the capacity to generate numbers randomly or sequentially and to dial those numbers. Plaintiff has fallen far short of adequately alleging that the equipment used to send the texts had the capacity to perform these functions. Indeed, Plaintiff includes no factual allegations that raise a plausible inference that the equipment at issue has the capacity to generate random or sequential numbers.

Instead, Plaintiff's allegations confirm that the equipment at issue did not utilize any ATDS functionality. Rather, the Complaint alleges that the text messages were targeted to a specific number rather than random or sequential numbers. In particular, Plaintiff alleges that the "text messages contained technical information or alerts that were clearly intended for another recipient." FAC ¶ 47. In other words, the texts were targeted to a specific person; they were not sent to random numbers. Moreover, the content of the text messages suggests that the messages were targeted to specific individuals. Plaintiff alleges that the messages contained text such as "FRM: EMC Control Center @e2ksmtp01.e2k.ad.ge.com"; "Severity: WARNING"; "Alert Name: PC Communications Error" and "gislonpeccsym.gis.corp.ge.com." FAC ¶ 48. In fact, Plaintiff concedes that the messages were intended for a specific person, alleging that she was the recipient of communications "intended for the prior owner or holder of her reassigned number." FAC ¶ 49. Simply, Plaintiff has alleged no facts from which the Court could conclude that the equipment used to send the texts was capable of generating and dialing random or sequential numbers.

This is significant because the clear text of the TCPA requires such an allegation. In enacting the TCPA, Congress specifically targeted equipment that generated and dialed random and sequential numbers because "telemarketers typically used autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015). Random dialing allowed callers to reach and tie up unlisted and specialized numbers. S. Rep. No. 102-178, at 2 (1991). Sequential dialing allowed callers to reach *all* such numbers in an area, creating a "potentially dangerous" situation in which no outbound calls (including emergency calls) could be placed. H.R. Rep. No. 102-317, at 10 (1991).

Consistent with congressional intent, the FCC "initially interpreted the [TCPA] as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed." *Dominguez*, 629 F. App'x at 372. In its first TCPA-related order, the Commission declared that equipment with "speed dialing," "call forwarding," and "delayed message" functions are not ATDSs, "because the numbers called are not generated in a random or sequential fashion." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 7 FCC Rcd. 8752, 8776 (1992). It later explained that the TCPA's ATDS provisions do not apply to calls "directed to [] specifically programmed contact numbers" rather than "to randomly or sequentially generated numbers." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 10 FCC Rcd. 12391, 12400 (1995). For fifteen years, the scope of the ATDS restriction remained settled.

In 2003, the Commission changed course, ruling that "predictive dialers" qualify as ATDSs. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14093 (2003). The Commission's interpretation, however, was "hardly a model of

clarity." *Dominguez*, 629 F. App'x at 372. The Order suggested varied tests for liability: whether the equipment can dial "at random, in sequential order, or from a database of numbers" (2003 Order at 14901); whether it can "store or produce telephone numbers . . . using a random or sequential number generator" *(id.* at 14091-92); and whether it can "dial numbers without human intervention" *(id.*). The Commission reaffirmed its murky interpretations in 2008 and 2012. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 FCC Rcd. 559, 566-67 (2008); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 15391, 15392 n.5 (2012).

In 2015, the Commission again revisited the definition of an ATDS. First, the Commission addressed what it means for a device to have the "capacity" to perform a given function—a subject its previous rulings had not resolved. On this point, the Commission concluded that the "capacity" of a device includes its "potential functionalities"—in particular, functionalities that the device could have, if reprogrammed or enhanced with appropriate software. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7974 (2015). Second, the Commission addressed what the functions of an ATDS are—the same subject addressed in its 1991, 1995, 2003, 2008, and 2012 Orders. The Commission "reaffirm[ed]" its earlier orders and again offered a medley of tests for what an ATDS must have the capacity to perform. *Id.* at 7971-72.

A group of petitioners challenged the Commission's 2015 Order in *ACA Int'l v. Fed. Commc's Comm'n*, 885 F.3d 687, 696 (D.C. Cir. 2018). The D.C. Circuit vacated the Commission's Order in relevant part. To start, the Court set aside the Commission's interpretation of "capacity" because it was too broad; if "capacity" includes "features that can be added through software changes or updates," any smartphone would be an ATDS, because "any smartphone, with the addition of software, can gain the statutorily enumerated features."

*ACA Int'l*, 885 F.3d at 696. The D.C. Circuit also set aside the Commission's interpretation of the functions of an ATDS (as embodied in the 2015 Order as well as the earlier 2003, 2008, and 2012 Orders that the 2015 ruling reaffirmed). *Id.* at 703. The Court explained that the Commission's interpretation was arbitrary and capricious because it failed to articulate a comprehensible test. The Commission had suggested both that "a device must *itself* have the ability to generate random or sequential telephone numbers to be dialed" and that it is "enough if the device can call from a database of telephone numbers generated elsewhere." *Id.* at 701. Because the Commission's interpretation contradicted itself, the D.C. Circuit set it aside. *Id.* at 703.

No Court in the Fourth Circuit has yet to rule on the interpretation of an ATDS after *ACA International*. However, courts elsewhere have concluded that *ACA International* overruled the FCC's prior interpretation of the statute and that courts must look to the language of the statute itself in determining what constitutes an ATDS. *See, e.g., Sessions v. Barclays Bank Del.*, No. 317 F. Supp. 3d 1208, 1212 (N.D. Ga. 2018) ("the D.C. Circuit clearly held that it invalidated all of the FCC's pronouncements as to the definition of 'capacity' as well as its descriptions of the statutory functions necessary to be an ATDS."); *Gary v. TrueBlue, Inc.*, No. 17-cv-10544, 2018 WL 3647046, at *7 (E.D. Mich. Aug. 1, 2018) ("Because the *ACA Int'l* decision vacated the FCC's orders regarding the definition of an ATDS, the Court must examine the statutory language"); *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 799 (D. Ariz. 2018) ("As a result of the D.C. Circuit's holding on this issue, this Court will not defer to any of the FCC's 'pertinent pronouncements'"); *Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406, 2018 WL 1567852, at *5 (D. Nev. Mar. 30, 2018) ("In light of this ruling, the Court will not stray from the statute's language"). For example, the Northern District of Illinois held that "*ACA*

*International* necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS even if it does not have the capacity to generate phone numbers randomly or sequentially and then to dial them." *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 935 (N.D. Ill. 2018).

Accordingly, the statutory text is the appropriate starting place for the Court to determine whether Plaintiff has sufficiently alleged the use of an ATDS. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As the *Pinkus* court held, "the phrase 'using a random or sequential number generator' necessarily conveys that an ATDS must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers." 319 F. Supp. 3d at 938. A complaint is due to be dismissed when it fails to state that the equipment used to send the text messages has the capacity to generate random or sequential numbers. *See Danehy v. Jaffe & Asher, LLP*, No. 5:14-CV-60-FL, 2015 U.S. Dist. LEXIS 32579, at *22-23 (E.D.N.C. Mar. 17, 2015) (dismissing TCPA claim for failure to allege facts sufficient to show that defendant used an ATDS).

### B. Plaintiff Fails to State a Claim for Conversion.[3]

Plaintiff alleges that the Dell Defendants are liable for conversion because they "committed wrongful detention and unwarranted interference with Plaintiff's property and illegally commandeered, used or misused her personal property." FAC ¶ 108. A claim for conversion under North Carolina law is "an unauthorized assumption and exercise of the right of ownership

---

[3] As demonstrated above, Plaintiff has not pled any plausible facts connecting the Dell Defendants to the text messages that Plaintiff allegedly received. But, even if Plaintiff had adequately pled that the Dell Defendants sent the text messages, Plaintiff's conversion claim nonetheless fails as a matter of law.

over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Precision Components, Inc. v. C.W. Bearing USA, Inc.*, 630 F. Supp. 2d 635, 642 (W.D.N.C. 2008). Under North Carolina law, "only tangible property is subject to conversion." *TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 542-43 (M.D.N.C. 2007). An "intangible asset" or interest is "an asset that is not a physical object, such as a patent, a trademark or goodwill." *Edmondson v. American Motorcycle Ass'n, Inc.*, 7 Fed.Appx. 136, 148 (4th Cir. 2001). Here, the complaint does not allege that any of the defendants physically took Plaintiff's cell phone, so there is no wrongful taking of a tangible good. Rather, Plaintiff appears to allege that the text messages she received interfered with the available space on her cell phone, which is not a tangible good. Thus, this claim should be dismissed with prejudice.

Plaintiff purports to bring her conversion claim under Alabama law, but there is no reason why Alabama law should apply to this tort. As Judge Coogler already determined, there is no connection between the facts in the complaint and the state of Alabama. Dkt. No. 46. Regardless, this claim also fails because under Alabama law, conversion consists of "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303-04 (11th Cir. 2010). "At its core, conversion is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession." *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1277 (M.D. Ala. 2010). The Dell Defendants did not take ownership or possession over any of Plaintiff's property. Plaintiff's theory that Defendants converted her property by

13

sending text messages cannot be squared with Alabama law. Accordingly, Plaintiff's claim for conversion must be dismissed with prejudice.

## V. CONCLUSION

The Court should dismiss the Complaint in its entirety because Plaintiff has not adequately alleged that the Dell Defendants were in any way involved in the sending of the alleged text messages.

Dated: December 10, 2018

>Respectfully submitted,
>
>*/s/ Derin Dickerson*
>Derin B. Dickerson
>Cassandra K. Johnson
>ALSTON & BIRD LLP
>1201 West Peachtree Street
>Atlanta, GA 30309
>Phone: (404) 881-7000
>Fax: (404) 881-7777
>derin.dickerson@alston.com
>cassie.johnson@alston.com
>
>Kendall Stensvad
>ALSTON & BIRD LLP
>555 Fayetteville Street, Suite 600
>Raleigh, NC 27601
>Phone: (919) 862-2245
>kendall.stensvad@alston.com
>
>*Counsel for Dell Defendants*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.29(f)**

I hereby certify that the Dell Defendants' motion to dismiss complies with the page and word count requirement under Local Rule 7.29(f).

*/s/ Derin B. Dickerson*
Derin B. Dickerson
Cassandra K. Johnson
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
derin.dickerson@alston.com
cassie.johnson@alston.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2018, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record and the Plaintiff.

>*/s/ Cassandra K. Johnson*
>Derin B. Dickerson
>Cassandra K. Johnson
>ALSTON & BIRD LLP
>1201 West Peachtree Street
>Atlanta, GA 30309
>Phone: (404) 881-7000
>Fax: (404) 881-7777
>derin.dickerson@alston.com
>cassie.johnson@alston.com