IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO.: 5:18-cv-00511-FL

| | |
|---|---|
| MARIAN SNOW, | ) |
| Plaintiff, | ) |
| v. | ) **REPLY IN SUPPORT OF MOTION TO DISMISS** |
| GENERAL ELECTRIC COMPANY; DELL TECHNOLOGIES; DELL, INC.; and DELL EMC, | ) Fed. R. Civ. P. 12(b)(6) |
| Defendants. | ) |

Plaintiff Marian Snow asks this Court to adopt the Ninth Circuit's minority approach to the Telephone Consumer Protection Act ("TCPA") that expansively broadens the statute's reach beyond its plain text. (Doc. 75 at 6-16). Under that ruling – which deviates from the Third Circuit, the D.C. Circuit, and several District Courts – *any* device that can store and autodial a telephone number qualifies as an automatic telephone dialing system ("ATDS") and, consequently, exposes the sender to liability. This interpretation impermissibly writes out of the statutory definition the express requirement that the device use a "random or sequential number generator." *See* 47 U.S.C. § 227(a)(1). Snow essentially concedes that her position relies entirely on this incorrect reading of the statute and that the First Amended Complaint ("FAC") must otherwise be dismissed for failure to comply with Federal Rule of Civil Procedure 8.[1]

---

[1] Because replies are discouraged, GE has focused its reply on the ATDS issue. GE maintains that the FAC should be dismissed because it fails to distinguish among Defendants and therefore does not plausibly impute liability to GE. (Doc. 66 at 9-11). In responding to that argument, Snow exclusively relies on matters outside of the pleadings, (Doc. 75 at 6-8) (citing to an affidavit), which is inconsistent with the "well-established" rule "that parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *Boster v. Live Well Fin., Inc.*, No. 170-3857, 2018 WL 1582725, at *2 n.3 (S.D. W. Va. Mar. 30, 2018). Snow's arguments concerning her conversion claim fail to address the fatal deficiencies with respect to GE's lack of intent to exercise control or assume ownership over her property. (Doc. 66 at 17-19).

**A.      Snow has failed to plausibly allege the existence of an ATDS.**

Snow identifies no facts in the FAC supporting an inference that GE, or any other defendant, sent a text message to her via an ATDS, defined as a dialing device that makes use of a "random or sequential number generator." *See* 47 U.S.C. § 227(a)(1). The use of such an ATDS is plainly an element of a TCPA claim, and the mere formulaic assertion of an ATDS without supporting factual allegations is insufficient under *Twombly* and *Iqbal*. *Johansen v. Vivant, Inc.*, No. 12-7159, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012) ("Use of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts. Still, when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details."). The FAC alleges the use of an ATDS in only the most conclusory manner: "Defendants" violated the TCPA by "*using an automatic telephone dialing system*." (Doc. 4 ¶ 106) (emphasis added). The FAC's description of the alleged delivery mechanism similarly echoes that formulaic assertion. *Id.* ¶ 52 ("Defendants utilized one or more of the forms of hardware, software, or equipment that the FCC characterizes as an automatic telephone dialing system."). Given that Paragraph 52 is the only allegation Snow identifies as supporting her claim that the "Defendants" used an ATDS, (Doc. 75 at 15), *Ibey v. Taco Bell* weighs decisively in favor of dismissal.[2] (Doc. 66 at 14-15).

Snow seeks a "reasonable inference that an ATDS was used" based on "the timing, length, frequency and volume" of the messages. (Doc. 75 at 12). But the cases on which she relies do not support that extrapolation. In each, the complaints included robust factual details that created an inference of ATDS use to deliver advertisements *en masse*.[3] *See, e.g.*, *Gould v. Farmers Ins. Exchange*,

---

[2]      Snow searches for other allegations in the FAC, but none "nudge [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For example, she claims that she alleged that the "long number" – that is, the sender's identifying number – "appeared to be generated *sequentially*." (Doc. 75 at 3) (emphasis added); *see also id.* at 12 n.16. But that is not the test. Under the TCPA, the number dialed, not the number from which the message was sent, must be from "a random or sequential number generator." 47 U.S.C. § 227(a)(1).

[3]      Moreover, the litany of cases cited by Snow (Doc. 75 at 11-13) are mostly older cases that rest on application of the ATDS definition adopted by earlier FCC Orders expansively construing what qualifies

288 F. Supp. 3d 963, 966 (E.D. Mo. 2018) ("The messages stated, *inter alia*, that the insurance agents wanted to follow up with [the plaintiff] in order to update and finalize her insurance quote."); *Jenkins v. LL Atlanta, LLC*, No. 14-2791, 2016 WL 1029524, at *4 (N.D. Ga. Mar. 9, 2016) ("Plaintiff alleges that the text message she received were advertisements, such as: 'Don't miss the #do it for the Vine Party tonight @ Opera Wednesdays. Show txt for Ladies Free till 11, 18+ $10.00 till 11, & 21+ $5 till 11!' and 'Tonight @ Opera Wednesdays Lust, Love and Latex Party! Arrive early and show txt for Ladies Free til 11, Guys 18+ till 11 & 21+ $5.'"); *McKenna v. WhisperText*, No. 14-424, 2015 WL 428728, at *1 (N.D. Cal. Jan. 30, 2015) ("A little over a year ago, [the plaintiff] got a text he did not expect from '16502412157.' The text was an invitation to download the Whisper app . . . ."); *Abbas v. Selling Source, LLC*, No. 09-3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) ("[T]here is no indication that [the defendant] had any reason to call [the plaintiff's] number aside from telemarketing purposes.").

Those cases stand for a narrow proposition: it could be reasonable to infer that *telemarketers* contacting random persons may have used ATDS software or hardware to contact plaintiffs.[4] Here, in contrast, the messages plainly are not mass, scattershot telemarketing communications like those described in the cases cited by Snow. Snow's messages were not delivered with her name prepopulated and "at automatically scheduled intervals," *Gould*, 288 F. Supp. 3d at 966-67; and Snow does not identify any other recipients of these messages, *Abbas*, 2009 WL 4884471, at *3; *Robbins v. Coca-Cola Co.*, No. 13-132, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (finding an ATDS based on

---

as an ATDS, which orders were overturned by *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). *See infra* at pages 9-10.

[4] Not even commercial messages are always sufficient to raise an inference of ATDS use. Snow cites *Musenge v. SmartWay of the Carolina, LLC*, (Doc. 75 at 11), but fails to note that the Western District of North Carolina dismissed the plaintiff's TCPA claim for failure to include factual details supporting an inference of ATDS use. No. 15-153, 2018 WL 4440718, at *3 (W.D.N.C. Sept. 17, 2018). The court reached that conclusion despite "a repeated transmission of generic, non-individualized messages indicative of an ATDS." *Id.* Likewise, in another case she cites, the court dismissed a plaintiff's TCPA claim for failure to plausibly allege the existence of an ATDS. *Jones v. NCO Fin. Servs.*, No. 13-12101, 2014 WL 6390633, at *2-3 (D. Mass. Nov. 14, 2014).

nationwide, "en masse" messages to others). In short, Snow's text messages simply do not contain "impersonal . . . text message advertisement" suggestive of ATDS use. *Jenkins*, 2016 WL 1029524, at *4.

Precisely the opposite, Snow's "good faith belief" is that the messages were specifically targeted and "intended for the prior owner or holder of her reassigned number." (Doc. 4 ¶ 49); *see also id.* ¶ 50 (describing the messages as "internal business or industrial communication[s]"). She alleges that the text messages contained "technical information or alerts." (Doc. 4 ¶ 48). Accepting Snow's allegations as true, it would be an entirely unreasonable inference that a company would use random or sequential number generating ATDS software or hardware for the purpose of communicating information to its employees. *Worlock v. County of Cumberland*, No. 14-102, 2014 WL 5761124, at *1 (E.D.N.C. Nov. 5, 2014) (a court should disregard "unwarranted inferences" or "unreasonable conclusions" when testing a complaint's sufficiency).

Snow has identified no case where a court was willing to infer that a random or sequential number generating autodialer was used based merely on allegations of high volume non-marketing messages alleged to have been directed to a particular individual. Without that inference, all that remains is Snow's conclusory allegation that the "Defendants" used an ATDS to deliver the text messages. Rule 8 demands more, whether a plaintiff is pro se or otherwise. *See Justice v. Dimon*, No. 10-413, 2011 WL 2183146, at *4 (W.D.N.C. June 6, 2011) ("[E]ven a pro se plaintiff's basis for relief 'requires more than labels and conclusions . . . .' Like plaintiffs who are represented by counsel, a pro se plaintiff must still 'allege facts sufficient to state all the elements of [the] claim.' In light of *Twombly* and *Bass*, conclusory statements with insufficient factual allegations, even when asserted by pro se plaintiffs, will simply not suffice.") (quoting *Twombly*, 550 U.S. at 555; *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)). Count One, therefore, should be dismissed.

**B.    Snow's request to follow the Ninth Circuit's expansive interpretation of an ATDS should be rejected as incompatible with the statutory text.**

Instead, Snow's position hinges entirely on this Court adopting the Ninth Circuit's minority approach in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). Based on *Marks*, Snow argues it is enough to allege that her telephone number was stored and autodialed rather than having been "called, using a random or sequential number generator," as required by the TCPA. Setting aside that nowhere in the FAC does Snow allege any facts that GE stored her telephone number, implicit in her argument is an acknowledgment that Count One fails unless this Court follows *Marks* and deletes the phrase "using a random or sequential number generator" from the statutory text. This Court should follow the Third Circuit's approach in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018), a decision adopted, over *Marks*, by other courts and consistent with the statute's plain text.

The split between the Third and Ninth Circuits stems from the ATDS definition. ATDS "means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In *Dominguez*, the Third Circuit held that "using a random or sequential number generator" modifies both "store" and "produce" in the preceding phrase "to store or produce telephone numbers to be called," such that merely storing and autodialing a telephone number is insufficient to qualify a system as an ATDS. The "key . . . question" was whether the defendant's system "functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers." *Dominguez*, 894 F.3d at 121. The Third Circuit concluded that the defendant's system failed that test because it "sent messages only to numbers that had been individually and manually inputted into its system by a user" – not "by generating random or sequential telephone numbers and dialing those numbers." *Id.* Although the plaintiff faced "great annoyance as a result of the unwanted text messages," the defendant was not liable because the plaintiff received those messages because of the actions of his telephone number's prior owner, "not because of random number generation." *Id.* Similarly, Snow's claims

should be dismissed because, just like the plaintiff in *Dominguez*, she asserts that she received the offending text messages only because of a prior owner's affiliation with the defendant. (Doc. 4 ¶ 49).

In *Marks* – the decision Snow urges this Court to follow – the Ninth Circuit determined that the adverbial phrase "using a random or sequential number generator" rendered the ATDS definition ambiguous. 904 F.3d at 1051.[5] To manufacture a non-existent ambiguity, the Ninth Circuit purports to find it unclear whether "using a random or sequential number generator" modifies "store," "produce," or both. *Id.* After finding that purported ambiguity, the court then considered "the context and structure of the statutory scheme" and held "that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' *but also includes devices with the capacity to dial stored numbers automatically*." *Id.* at 1052 (emphasis added). The Ninth Circuit "read" the definition to "provide that the term [ATDS] means equipment which has the capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers." *Id.* In other words, the Ninth Circuit revamped the definition by rearranging, deleting, and adding words:

| **Statutory Text** | **Ninth Circuit** |
|---|---|
| "The term 'automatic telephone dialing system' means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." | "The term 'automatic telephone dialing system' means equipment which has the capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers." |

The Ninth Circuit's reading is not only inconsistent with the Third Circuit, but also with the D.C. Circuit's analysis in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). In that case, discussed in detail in the Motion to Dismiss (Doc. 66 at 5-9), the D.C. Circuit considered the term "capacity" in the ATDS definition. The court rejected the FCC's "expansive" interpretation that included future capacity that can be added with software. 885 F.3d at 700. The D.C. Circuit reasoned

---

[5]    Snow is correct that the Ninth Circuit did not grant a petition for en banc rehearing. (Doc. 75 at 11 n.15). But on November 7, 2018, the Ninth Circuit did stay the mandate in *Marks* pending a decision by the Supreme Court as to whether to grant certiorari review.

6

that, because it was "undisputed that any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS, . . . it follows that all smartphones, under the [FCC's] approach, meet the statutory definition of an autodialer." *Id.* at 696-697. But the D.C. Circuit rejected as "utterly unreasonable" and "untenable" any ATDS interpretation that would "render every smartphone an ATDS subject to the [TCPA's] restrictions." *Id.* at 697. That principle – that an ATDS interpretation that renders all smartphone users potential TCPA violators should be avoided – is incompatible with the Ninth Circuit's decision that merely having the ability to autodial stored phone numbers is sufficient to impose liability. For example, many smartphones have the capacity to reply automatically with a text message to incoming calls or text messages. For the Ninth Circuit, any device that "ma[kes] automatic calls from lists of recipients" may qualify as an ATDS, *Marks*, 904 F.3d at 1051, which means "nearly every American is a TCPA-violator-in-waiting, if not a violator-in-fact" when they turn on their automatic replies. *ACA Int'l*, 885 F.3d at 698.

Snow now asks this Court to follow the Ninth Circuit's lead, a result rejected by other courts based on the plain language of the statute. *See, e.g.*, *Thompson-Harbach v. USAA Fed. Sav. Bank*, No. 15-2098, 2019 WL 148711, at *13 (N.D. Iowa Jan. 9, 2019) ("[T]his Court finds the *Marks* court's decision [regarding whether numbers to be called must have been generated by a random or sequential number generator] erroneous as a matter of statutory construction."); *Johnson v. Yahoo!, Inc.*, No. 14-2028, 2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018) (rejecting *Marks*'s TCPA interpretation and holding that "[t]he phrase 'using a random or sequential number generator' applies to the numbers to be called," such that "[c]urated lists developed without random or sequential number generation capacity fall outside the statute's scope"); *Roark v. Credit One Bank, N.A.*, No. 16-173, 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018) (rejecting *Marks* in favor of the Third Circuit's "more persuasive" reading of the TCPA and holding that "the correct inquiry is whether a device can generate numbers to dial either randomly or sequentially").

In *Thompson-Harbach*, siding with the Third Circuit, the Northern District of Iowa persuasively explained the flaws in the Ninth Circuit's analysis:

> The Court finds that the adverbial phrase "using a random or sequential number generator" modifies both "produce" and "store." In other words, the Court finds that a device meets the definition of an ATDS only when it is capable of randomly or sequentially producing, or randomly or sequentially storing telephone numbers. Plaintiff's interpretation would only be correct if subsection (a)(1)(A) read: "to store or, using a random or sequential number generator, to produce telephone numbers to be called." Rearranging the text in that manner would make it clear that "using a random or sequential number generator" modifies only "produce" and not "store." **In the statute, however, the adverbial phrase is preceded by a comma and follows both verbs. The words "using a random or sequential number generator" is set off from both verbs ("store" and "produce") with a comma.**
>
> For example, if the statute read "The term ATDS means equipment which has the capacity—(A) to dial, and to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . ," the words "to dial" would still be tied to "telephone numbers to be called," but "to dial" would not be modified by "using a random or sequential number generator" because the phrase has been isolated from "to dial," and is set off from "store" and "produce." The TCPA thus defines as an ATDS a device that has the capacity "[1] to store or produce [2] telephone numbers to be called" and then "to dial such numbers." 47 U.S.C. § 227(a)(1). The comma separating "using a random or sequential number generator" from the rest of subsection (a)(1)(A) makes it grammatically unlikely that the phrase modifies only "produce" and not "store."

No. 15-2098, 2019 WL 148711, at *12 (citations omitted) (emphasis added).

In reaching that conclusion, the Northern District of Iowa relied on the punctuation canon, "under which a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one where the phrase is separated from the antecedents by a comma." *Id.* (citation omitted). That approach accords with the Fourth Circuit's admonition that statutory language is ambiguous only when the language "is susceptible to more than one *reasonable* interpretation." *In re Maharaj*, 681 F.3d 558, 568 (4th Cir. 2012) (emphasis added). Here, the only reasonable interpretation, based on the plain language and punctuation of the statute and without reworking the text as the Ninth Circuit did, is that "using a random or sequential number generator" modifies both "produce" and "store" in the preceding phrase of the stature.

In support of her argument, Snow cites two cases from this Court – *Danehy v. Jaffe & Asher, LLP* and *Cartrette v. Time Warner Cable, Inc.* – but both are inapposite. In *Danehy*, this Court was not asked to engage in statutory construction; instead, this Court *dismissed* the plaintiff's TCPA claim based on the conclusory allegation of ATDS use. *Danehy v. Jaffe & Asher, LLC*, Case No. 14-60, Complaint, Doc. 1 at 11 ("Upon information and belief, [Defendant] made several calls . . . using an automatic telephone dialing system . . . .") (E.D.N.C. Feb. 4, 2014). Just as in *Danehy*, Snow's FAC contains no factual allegations supporting ATDS use. Snow tries to rely on the Court's passing reference that to an ATDS as "equipment that has the capacity to store telephone numbers and dial such numbers." (Doc. 75 at 8-9). But that decision was issued when this statement reflected then-binding FCC rulings on the definition of an ATDS – rulings that have now been overturned.

*Cartrette* is equally unhelpful for Snow. There, the Court expressly relied on the FCC's 2015 Order in reaching its decision, 157 F. Supp. 3d 448, 456-67 (E.D.N.C. 2016), but again the D.C. Circuit vacated the 2015 Order in *ACA International*. (Doc. 66 at 5-9) (detailing the history of the FCC's TCPA orders and the effect of *ACA International* on them, including the 2015 Order). Although the Court in *Cartrette* also relied on the 2003 and 2012 Orders, "the D.C. Circuit clearly held [in *ACA International*] that it invalidated *all* of the FCC's pronouncements as to the definition of 'capacity' as well as its descriptions of the statutory functions necessary to be an ATDS." *Sessions v. Barclays Bank Del.*, 317 F. Supp. 3d 1208, 1212 (N.D. Ga. 2018) (emphasis added). Even the Ninth Circuit in *Marks* agreed that "[b]ecause the D.C. Circuit vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains." *Marks*, 904 F. 3d at 1049; *see also Thompson-Harbach*, No. 15-2098, 2019 WL 148711, at *10 ("finding that the *ACA International* holding necessarily invalidated the FCC's 2003 Order and 2008 Declaratory Ruling insofar as [they] also define a predictive dialer as an ATDS, even when the predictive dialer lacks the capacity to generate phone numbers randomly or sequentially and to then dial them") (collecting cases). To the extent this Court acknowledged the viability of using "preprogrammed lists"

to autodial numbers, 157 F. Supp. 3d at 457, Snow has not alleged a "list"– only targeting of her number – but a "list" must contain more than one item. *See generally* American Heritage Dictionary (defining "list" as "[a] series of *names*, *words*, or other *items*"); Merriam-Webster Dictionary (defining "list" as "a simple series of *words* or *numerals* (such as the names of *persons* or *objects*)").

Finally, Snow turns to non-binding cases from Alabama (*Swaney v. Regions Bank*) and Florida (*Adams v. Ocwen Loan Servicing, LLC*). In *Swaney*, the Northern District of Alabama adopted a Report and Recommendation that "relied on language from a 2003 FCC decision which concluded that, in order to be considered an ATDS, the 'equipment need only have the capacity to store or produce telephone numbers.'" No. 13-544, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018). The court rested its holding on the supposed validity of an FCC order from 2003, which concerned so-called "predictive dialers." *Id.* (rejecting the defendant's argument because of "the continuing validity of the 2003 FCC Order"). As noted above, courts have rejected the premise that the FCC's 2003 Order remains viable after *ACA International*. *Marks*, 904 F. 3d at 1049; *Sessions*, 317 F. Supp. 3d at 1212; *Thompson-Harbach*, No. 15-2098, 2019 WL 148711, at *10. In *Adams*, without elaboration, the Southern District of Florida adopted the Ninth Circuit's reasoning in *Marks*. No. 18-81028, 2018 WL 6488062 (S.D. Fla. Oct. 29, 2018). Thus, *Adams* adds nothing new – it merely followed *Marks* – and provides no unique reason for this Court to do so.

\* \* \* \*

Respectfully submitted this the 6th day of February, 2019.

| | |
|---|---|
| /s/ Wesley B. Gilchrist | /s/ Jon Berkelhammer |
| Wesley B. Gilchrist | Jon Berkelhammer |
| Jeffrey P. Doss | N.C. State Bar No. 10246 |
| Brian P. Kappel | ELLIS & WINTERS LLP |
| LIGHTFOOT, FRANKLIN & WHITE, LLC | N.C. State Bar No. 10246 |
| The Clark Building | 300 North Greene Street, Suite 800 |
| 400 20th Street North | P.O. Box 2752 |
| Birmingham, Alabama 35203 | Greensboro, North Carolina 27401 (27402) |
| Telephone: (205) 581-0700 | Telephone: (336) 389-5683 |
| wgilchrist@lightfootlaw.com | jon.berkelhammer@elliswinters.com |
| jdoss@lightfootlaw.com | |
| bkappel@lightfootlaw.com | |

*Attorneys for Defendant General Electric Company*

**CERTIFICATE OF SERVICE**

    This is to certify that the foregoing has been duly served by depositing a copy thereof in the United States mail, first class addressed to the following:

Marian Snow
4336 Ridgewood Road
Tuscaloosa, AL 35404
*Plaintiff*

Kendall L. Stensvad
ALSTON & BIRD LLP
5550 Fayetteville Street, Suite 600
Raleigh, NC 27601

Derin B. Dickerson
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
*Attorneys for Defendants*
*Dell, Inc., Dell Technologies, and Dell EMC*

This the 6th day of February, 2019.

                                            /s/ Jon Berkelhammer
                                            *Attorney for Defendant*
                                            *General Electric Company*